Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI230008224
Transaction ID: 0020620549
Filing Date: 10/13/2023 12:53:50 PM CDT

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| ROSE A MORA, | ) | CI 23 – _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff and for her cause of action against Defendant, pursuant to S. Ct. R. § 6-1115(a), states and avers as follows:

### FACTS APPLICABLE TO ALL COUNTS

1. At all times material hereto, Plaintiff was a resident of Omaha, Douglas County, Nebraska.

2. At all times material hereto, Defendant State Farm Mutual Insurance Company (hereinafter, "Defendant" or "State Farm"), is a United States corporation who issues insurance contracts (policies) and conducts business in Douglas County, Nebraska.

3. Plaintiff was the owner of an automotive policy that she purchased from Defendant, Policy #046-0246-F04-27E, which was in full force and effect on September 22, 2022.

4. On or about September 22, 2022, Plaintiff was involved in an automobile crash (hereinafter, "the crash" or "the collision") at the intersection of 42nd and Bancroft Streets in Omaha, Nebraska.

5. Alejandra Lopez-Aguado, the other driver involved in the crash, violated a red light traffic signal, causing a T-bone impact with the car Plaintiff was driving.

6. On the day of the subject crash, Plaintiff was 81 years of age.

7. A witness who was present at or near the scene of the crash observed that Lopez-Aguado proceeded through a red light into the intersection of 42nd and Bancroft and caused a crash.

8. Police who arrived at the scene of the crash cited Alejandra Lopez-Aguado (at times referred to hereinafter as "the tortfeasor") with a red light violation.

9. No person known to Plaintiff or her counsel has ever disputed Lopez-Aguado's complete liability for causing the crash, which would objectively be defined as a T-bone collision.

10. The tortfeasor's liability insurance carrier paid its policy limits, the Nebraska state minimum coverage of $25,000, in exchange for a release of liability as to the tortfeasor.

11. After the crash and subsequent investigation, Plaintiff was directly transported to the Nebraska Medical Center's emergency department where she was evaluated and treated.

**EXHIBIT 1**

12. At the hospital on the night of the crash, Rose Mora (Plaintiff) received Iopamidol and Tylenol for pain, had an EKG taken, received an X-ray of her right tibia/fibula, and underwent CT scans of the chest, abdomen, pelvis, head, cervical spine, thoracic spine.

13. Plaintiff was admitted to the hospital and was not discharged from the Nebraska Medical Center until September 28, 2022, six days after the subject crash. Plaintiff was later re-admitted to the same hospital on October 24, 2022 and was not released until November 1, 2022.

14. As a direct and proximate result of the subject crash, Plaintiff was injured and suffered damages as defined by Nebraska law which are set forth in greater detail hereinafter.

15. While the following list is not exhaustive, Plaintiff directly relates the following to the crash: multiple pelvic fractures, a sternum fracture with associated hematoma, a displaced right sacral alar fracture, acute and traumatic pain all over the body, pain while breathing, difficulty with walking, sleep disturbances, right-sided low back pain, ischial bursitis, tendinopathy, left SI joint dysfunction, elevated troponin levels, paresthesia, and aggravations injuries to several joints with age-appropriate arthritis. These damages were proximately caused by the tortfeasor's negligence insofar as those injuries:

    a. would have not occurred but for Lopez-Aguado's negligence; and
    b. are the natural, probable and reasonably foreseeable consequences of Lopez-Aguado's negligence.

16. As a result of Lopez-Aguado's negligence, Plaintiff was damaged in the following ways:

    a. Incurred medical expenses in the amount of $124,907.14;
    b. Pain, suffering, and mental anguish— past, present and future;
    c. Past, present and future loss of full body and mind;
    d. Future medical expenses, in an amount to be determined before trial;
    e. Loss of enjoyment of life;
    f. Humiliation;
    g. Spiritual damages as her injuries made it too difficult to attend church or receive her Holy Communion;

17. Plaintiff is entitled to full and fair compensation for all special and general damages, harm, and losses she has sustained and will sustain, and these damages clearly exceeded the coverage available to tortfeasor Lopez-Aguado. As such, Plaintiff is now entitled to recover underinsured motorist ("UIM") benefits under her insurance agreement with State Farm, as set forth in greater detail below.

## COUNT 1 – UNDERINSURED MOTORIST CLAIM AGAINST STATE FARM

18. On or about February 22, 2023, Plaintiff gave written notice to Defendant that they were the Underinsured Motorist ["UIM"] carrier, and they had a right of substitution.

19. On March 3, 2023, Defendant notified Plaintiff that it would not exercise its right to substitute the funds offered for Lopez-Aguado's policy limits of $25,000.00.

20. The herein-referenced insurance agreement between Plaintiff and Defendant was at its time of its execution a valid and enforceable contract for services under Nebraska law.

21. In that agreement, Defendant promised to pay damages for injuries that its insured (Plaintiff) could legally recover from the owner or operator of an uninsured or underinsured motor vehicle, insofar as those injuries are caused by an automobile collision that arises out of the ownership, maintenance or use of an underinsured vehicle.

22. Since Plaintiff's damages were not adequately compensated by the policy-limits payout of Allstate (on behalf of Lopez-Aguado), Plaintiff is contractually entitled to recover up to the UIM policy limits from Defendant.

23. On May 23, 2023, Defendant received a "Settlement Opportunity" from Plaintiff and her undersigned counsel. The settlement opportunity contained:

   a. A detailed letter from Plaintiff's counsel which generally set forth information contained in Paragraphs 1-17, *supra*;

   b. An itemized list of the damages Plaintiff relates to the subject crash, wherein notice was given of the fact that Plaintiff incurred nearly $125,000 in medical expenses;

   c. A copy of the relevant Investigator's Motor Vehicle Accident Report;

   d. Copies of every medical bill and record known to Plaintiff which she relates to the subject crash;

   e. In-hospital photos of Plaintiff and of a radiograph of her fractured pelvis;

   f. A detailed medical chronology, designed to aid the reader's comprehension of Plaintiff's extensive crash-related injuries and their associated medical treatment; and

   g. An unequivocal offer to State Farm to settle Plaintiff's UIM claim for the limits of her State Farm insurance policy, with a thirty day window for State Farm to accept.

24. On June 23, after requesting undersigned counsel granted Defendant additional time to consider the offer referenced in Paragraph 23(g), Defendant State Farm offered Plaintiff $91,729.75 to resolve her UIM claim.

25. Defendant's offer of $91,729.75 did not in *any way* correspond with the nature of Plaintiff's damages resulting from the subject crash. In fact, by adding Defendant's initial offer combined with the $25,000 Plaintiff received from the tortfeasor's insurance would not have made Plaintiff whole on the basis of her then-incurred medical bills alone ($124,907.14).

26. On August 2, 2023, Plaintiff's undersigned counsel contacted Defendant in writing again, reasserting Plaintiff's offer to settle for the applicable UIM limits. Again, Plaintiff gave Defendant a reasonable length of time to reevaluate its coverage decision and fairly compensate its insured, Ms. Mora, for her medical expenses and the other damages set forth hereinabove.

27. On or about September 1, 2023, Defendant advised Plaintiff in writing that its revised evaluation of the UIM claim was $125,555.00.

28. Through its issuance of unjustifiably low offers to Plaintiff, Defendant acted in a manner entirely inconsistent with its contractual duty to pay UIM benefits to its insured upon a showing of a legitimate claim of damages. Nowhere in any of its written communication to

Plaintiff or her counsel did Defendant, or any of its representatives, acknowledge the seriousness of Rose Mora's economic or human damages in this case.

29. Plaintiff has been damaged in an amount no less than $124,907.14 (which reflects economic damages only) due to the injuries she incurred as a direct result of the collision, plus an amount to yet be determined by a jury. Due to the extensive and permanent nature of the injuries she sustained in the subject collision, Plaintiff is entitled to the aforesaid policy limits from Defendant, her own insurance carrier to whom she has paid contractual premiums in return for UIM coverage.

30. Based on the foregoing, evidence in support thereof, and applicable principles of Nebraska law, Defendant committed an egregious breach of its insurance contract with Plaintiff.

WHEREFORE, Plaintiff Rose Mora prays for judgment against Defendant State Farm Automobile Fire Insurance Company in the amount of the policy limits, $250,000.00, plus interest and reasonable attorney's fees pursuant to statue, pre-judgement interest, post-judgment interest, and costs.

## COUNT 2: FIRST-PARTY BAD FAITH CLAIM AGAINST STATE FARM

31. Plaintiff incorporates by reference paragraphs 1-30, hereinabove.

32. On or about February 22, 2023, Plaintiff made demand of UIM benefits upon Defendant and presented all relevant medical and financial records to support her claim.

33. In an act of good faith, Plaintiff gave Defendant a second time to reach a reasonable settlement of her UIM claim on August 2, 2023, which Defendant again rejected.

34. At no point did Defendant ever explain the basis of its $91,729.75 offer to Plaintiff or its subsequent offer of $125,555.00.

35. Defendant acted knowingly or in reckless disregard of the lack of reasonable basis for refusing to adjust Plaintiff's claim for the limits of the underinsured motorist coverage that it is contractually obligated to pay, or to pay any amount of money that corresponds to the Defendant's good faith evaluation of the claim.

36. Defendant has made no discernible attempt to evaluate the seriousness of Plaintiff's claims, from the date they were presented with Plaintiff's UIM claim up to the filing of this suit.

37. Further, Defendant has not made a fair offer to compensate Plaintiff for the damages she suffered in excess of the insurance coverage held by the tortfeasor.

38. Given the quantity and quality of independently verifiable evidence that Plaintiff has provided Defendant regarding her injuries and their medical prognosis, Defendant knew or had reason to know that its denial of Plaintiff's claim was without reasonable basis.

WHEREFORE, Plaintiff prays for a judgment against Defendant in the amount of its policy limits, plus damages related to its bad faith handling of Plaintiff's UIM claim, plus

interest or reasonable attorney's fees pursuant to statute, pre-judgment interest, post-judgement interest, and costs.

DATED this 13th day of October, 2023.

        ROSE A MORA, Plaintiff

        By:    /s/ Daniel C. Martin
        Daniel C. Martin, #27218
        Pesek Law LLC
        4826 S 24th Street
        Omaha, NE  68107
        Tel.:   (402) 342-9684
        Fax:   (402) 342-9683
        daniel@peseklaw.com